**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HILARY CALEB GBOTOE**, | : | |
| | : | |
| *Plaintiff* | : | Case No.   20-cv-0890-JMY |
| | : | |
| v. | : | |
| | : | |
| **LANCASTER COUNTY, PA, ET AL.**, | : | |
| | : | |
| *Defendants* | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                              **AUGUST 18, 2021**

*Pro se* Plaintiff, Hilary Caleb Gbotoe, brings the above-captioned action against Defendants Lancaster County, Pennsylvania, Lancaster County Prison Board, Warden Cheryl Steberger, and Corrections Officer Ryan McLeod (hereinafter, "Defendants"), alleging that he was subjected to force which was excessive and not constitutionally permissible while housed as an inmate at Lancaster County Prison.  Now before the Court is Defendants' Motion for Summary Judgment.  ("MSJ," ECF No. 35.)  The Court has considered the submissions made in support of the pending motion and finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons that follow, Defendants' Motion will be granted.

   **I.      BACKGROUND[1]**

   **A.      Factual Background[2]**

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

[2] Unless indicated otherwise or where attributed to one party or another, the facts recited herein are undisputed.  To the extent any of the facts are disputed, the Court concludes they are not material to

"On August 5, 2019, at approximately 7:30 a.m., a fight occurred between two inmates in the unit Plaintiff was housed [i]n, leading to a 'code yellow' being called and all inmates being ordered to . . . immediately return to their cells." ("Def. SUMF," ECF No. 36 ¶ 6.)  During his deposition Plaintiff stated that he was aware that "when there is a fight in the cell block and a code is called [Lancaster County Prison's] rules require all inmates to return to their cells[.]" (*Id*. ¶ 8.)  Plaintiff also indicated during his deposition that when the code was called that morning he "was moving slowly because of the bullet in his hip and because he was 'still eating his food.'" (*Id*. ¶ 9.)[3]  Plaintiff asserts that "as he was walking, [Defendant Correctional Officer] McLeod 'attacked' him pushing him three times . . . [and] that the first two times he was pushed into the wall, causing him to strike his hip and backside." (*Id*. ¶ 10.)  Defendant McLeod "does not deny that he pushed Plaintiff three times, but [asserts] it was only due to Plaintiff's non-compliance with verbal commands to move to his cell[.]" (*Id*. ¶ 11.)  "The first and second time McLeod pushed Plaintiff it was just hard enough to push him in the direction towards his cell, and Plaintiff's body did not hit the wall either time." (*Id*. ¶ 12.)  "The third time McLeod pushed Plaintiff [it] was with less force, as it was simply to push Plaintiff into his cell and out of the doorway to his cell so that McLeod could shut the cell door." (*Id*. ¶ 13.)  During his deposition, Plaintiff testified "that due to his injuries he is unable to exercise or help lift groceries around the house, and that he has to occasionally use a cane to walk around." (*Id*. ¶ 17.)  However, Plaintiff also "testified that two weeks after the incident . . . he was able to 'shoot hoops' without any

---

the disposition of the pending motion.  Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections—unless discussed herein.  As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on any disputed evidence.

[3] Prior to his incarceration, specifically on October 16, 2018, Plaintiff was shot.  (*Id*. ¶ 4.)  "Plaintiff claims that the bullet remains lodged in his hip, and [that] he continues to suffer from swelling, pain, and mobility issues since the shooting."  (*Id*. ¶ 5.)

issue." (*Id.* ¶ 20.)  Further, a fellow inmate stated during his deposition that following the incident he observed that "Plaintiff had no trouble participating in physical activities, *i.e.*, working out, doing burpees, pull ups, and dips." (*Id.* ¶ 19.)  Defendants assert that "Plaintiff has produced no medical records concerning his purported injuries related to his interaction with McLeod[, and that other] than receiving Tylenol and other over-the-counter pain medicines, Plaintiff testified that he did not receive any medical treatment either in [Lancaster County Prison] or since his release for his hip." (*Id.* ¶¶ 24-25.)

### B.     Procedural History

Plaintiff commenced this action on February 14, 2020.  ("Compl.," ECF No. 1.)  The Complaint sets forth four causes of action: (1) "42 U.S.C. § 1983—Excessive Use of Force[;]" (2) "42 U.S.C. § 1983—Policy, Custom, Pattern and Practice [*Monell* Claim;]" (3) "State Law Claim—Assault and Battery[;]" and (4) "State Law Claim—Intentional Infliction of Emotional Distress[.]" (*Id.* ¶¶ 21-39.)  On April 16, 2020, Defendants filed their Answer denying all liability.  (ECF No. 9.)

On September 25, 2020, Plaintiff's counsel filed a Motion to Withdraw as Attorney, which the Court granted after holding a hearing on October 26, 2020.  (*See* ECF Nos. 20, 27, 28.) Plaintiff was advised during the hearing of the Court's guidelines for appearing *pro se*, and a copy of the Court's "Notice of Guidelines for Representing Yourself in Civil Cases" was mailed to him that same day.  (*See* ECF No. 29.)

On April 19, 2021, Defendants filed their Motion for Summary Judgment.  (*See* MSJ.) After the deadline to file an opposition passed, the Court entered an order directing Plaintiff to file a brief in opposition on or before June 25, 2021.  (*See* "30-Day Extension Order," ECF No. 38.)  In that same Order, the Court reminded Plaintiff of his *pro se* obligations to conform with

the requirements of Civil Local Rules 7.1 and 5.1(b).  To date, Plaintiff has failed to file an opposition brief.

## II.     LEGAL STANDARD

Under Federal Rules of Civil Procedure 56(a), a party is entitled to summary judgment where the movant shows that there is "no genuine dispute as to any material fact".  Fed. R. Civ. P. 56(c).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  *Ideal Dairy Farms, Inc. v. John Labatt*, Ltd., 90 F.3d 737, 743 (3d Cir. 1996).  The burden of proof rests originally with the movant to show the lack of dispute as to a material fact and must do so by citing to specific portions of the record which demonstrate the movant's entitlement to judgment under Rule 56.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To determine whether a movant has demonstrated that there are no genuine issues of material fact, a court must first consider the evidence presented by the moving party and draw all reasonable inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

For claims or defenses where the movant bears the burden of proof at trial, a movant "must show that it has produced enough evidence to support the findings of fact necessary to win."  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007); *see also Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) ("[I]t is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of [his] claim.").  For claims or defenses that the non-movant bears the burden of proof at trial, a movant can simply point out "that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Once the movant has met its burden of

proof under summary judgment, the opposing party "must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El*, 479 F.3d at 238.

In order to survive summary judgment, the party opposing summary judgment must raise "more than a mere scintilla of evidence in its favor." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).  The party opposing summary judgment must cite specific evidence in the record and may not "rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (describing this phase of summary judgment as "put up or shut up time for the non-moving party").  Accordingly, "it is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of [his] claim." *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003).

## IV. DISCUSSION

Defendants aver that "Plaintiff has failed to produce evidence to support the elements of his various claims, [and therefore] submit that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law."  (MSJ at 14.)  The Court will discuss each claim in turn.

### A. Count I—Excessive Use of Force

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain on an inmate.  *See Wilkins v. Gaddy*, 559 U.S. 34, 34-35 (2010); *see also Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  However, because Plaintiff was incarcerated at Lancaster County Prison as a pretrial detainee at the time of the alleged use of force (*see* MSJ at 14), the Court will therefore analyze Plaintiff's excessive use of force claim under the Due Process Clause of the Fourteenth Amendment.  *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir.

2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 551 (1979) ("Our precedent is clear that while the detention of sentenced inmates is governed by the Eighth Amendment, the treatment of pretrial detainees is governed by the Due Process Clause[.]")); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 426-27 (2015) (pretrial detainee protected from the "use of excessive force that amounts to punishment"). Under the Fourteenth Amendment, a pretrial detainee must prove that law enforcement had an express intent to punish the detainee and must not have had an "alternative purpose" for the force or restriction, or that the force or restriction "appears excessive in relation to the alternative purpose assigned[.]" *Bell*, 441 U.S. at 538 (internal quotation marks and citation omitted). Whether the use of force rises to an unconstitutional level is determined by "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (citing *Whitley v. Albers*, 474 U.S. 312, 320-21 (1986)).

In light of *Hudson*, it is clear to the Court that the actions complained of were a constitutionally permissible use of force. *See Hudson*, 503 U.S. at 6-7. Specifically, the Court finds that Plaintiff's excessive force claim fails as a matter of law because Plaintiff has produced no evidence demonstrating that the actions of Defendant McLeod were done to punish Plaintiff and because the force used by Defendant McLeod was based on a good faith effort to achieve Plaintiff's compliance with the officer's commands and to secure Plaintiff in his cell during an active "code yellow" emergency situation at Lancaster County Prison. For example, Defendant McLeod testified during his deposition that the only reason he pushed the Plaintiff towards his cell was to gain Plaintiff's compliance only after Plaintiff had ignored several verbal commands to "lock up," and Defendant McLeod, as a correctional officer was responsible for the safety of the prison, including the inmates and the correctional officers who were outnumbered by the

inmates at that time. (*See* "McLeod Dep.," ECF No. 36-4 at 44-45.) Plaintiff also testified during his deposition that Defendant McLeod was the only correctional officer in the immediate area and that there were numerous inmates out of their cells at the time that the "code yellow" was called. (*See* "Plf. Dep.," ECF No. 36-2 at 109.) Thus, Plaintiff has failed to show that Defendant McLeod's actions were meant to punish and not for an "alternative purpose"—namely, to get Plaintiff into his cell in an effort to maintain or restore discipline during an active inmate-fight situation. *See Hudson*, 503 U.S. at 6-7; see also *Bell*, 441 U.S. at 538.

Moreover, our Third Circuit Court of Appeals has previously examined a "prisoner push" claim similar to the instant action. *See Carson v. Mulvihill*, 488 F. App'x 554, 562 (3d Cir. 2012). In *Carson*, an inmate, who was confined to a wheelchair, alleged that excessive force was used by a corrections officer when the officer "grabbed his wheelchair, swung it around, and launched Carson forward from the cell door directly into the steel bed." *Id*. at 557 (internal quotation marks omitted). In that situation the corrections officer was also attempting to have the plaintiff return to his cell. *Id*. In finding that the District Court did not err in granting summary judgment in favor of the defendant officer, the Third Circuit held:

> The facts Carson alleges simply do not show that the prison guard lacked a legitimate nonpunitive purpose for his actions, or that the force was excessive. At most, Carson has alleged that in an attempt to force him into his cell, the prison guard pushed Carson's wheelchair rapidly and harshly through his cell door, causing him to fall sharply onto his bed inside the door. But not . . . every malevolent touch by a prison guard gives rise to a federal cause of action, and not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Id*. at 562 (citing *Hudson*, 503 U.S. at 9).

Accordingly, the Court finds that the alleged use of force in the instant case—three pushes to get Plaintiff in the direction of and into his cell block—constitutes no Due Process violation. Plaintiff's excessive use of force claim fails as a matter of law.

### B.   Count II—*Monell*

Plaintiff's Complaint asserts that Defendants—Lancaster County and Warden Steberger—have "adopted and maintained for many years recognized and accepted policies, customs, and practices within the prison . . . which knowingly place inmates such as the Plaintiff in dangerous positions and/or increased the risk of danger to inmates such as the Plaintiff. Said policies, customs and practices ultimately resulted in Plaintiff's being injured[.]"  (Compl. ¶ 26.)

The liability of a municipality—in this case, Lancaster County—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipal entity may be liable under 42 U.S.C. § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights." *Id*. at 694; *see also Reitz v. Cty. of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

First, as a threshold matter, a municipality can only be held liable when one of its employees is first found to be liable under 42 U.S.C. § 1983. *See Monell*, 463 U.S. at 658; *see also City of Los Angeles v. Heller*, 475 U.S. 796 (1986). Accordingly, in order to establish a derivative *Monell* claim against Defendants County of Lancaster and Warden Steberger, Plaintiff must first establish that a constitutional violation was committed by Defendant McLeod. *See*

8

*Heller*, 475 U.S. at 799 (no constitutional violation, then no derivative municipal liability claim). As discussed *infra*, *see* Section IV.A., the Court has found that Plaintiff's excessive use of force claim fails as a matter of law; accordingly, Plaintiff cannot assert a derivative *Monell* claim. See Heller, 475 U.S. at 799. Second, and assuming *arguendo* that Plaintiff had established an underlying constitutional violation, the Court would still find that Plaintiff's *Monell* claim fails as a matter of law because Plaintiff has failed to introduce any evidence to support the idea of a pattern, policy, or custom of excessive force at the Lancaster County Prison. A review of the Complaint reveals zero examples of similar instances of excessive force or when such behavior has been facilitated or condoned. (*See generally* Compl.); *see also Butler v. Cty. of Northampton*, Civ. No. 14-3733, 2017 WL 3485878, at *5-7 (E.D. Pa. Aug. 15, 2017) (dismissing *Monell* "failure to train" claim when the plaintiff did not present any evidence of similar constitutional violations). Rather, it appears in the Complaint that Plaintiff asserts that simply because Defendants Lancaster County, Lancaster County Prison Board, and Warden Steberger are "in charge" of the prison, they are therefore responsible for Defendant McLeod's alleged misconduct. (*See* Compl. ¶ 2-4.) However, it is well recognized in our Circuit that municipalities cannot be held liable under 42 U.S.C. § 1983 under a theory of *respondeat superior*. *See Monell*, 463 U.S. at 694; *see also Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) ("[A]s is well established, a municipality is not liable for the unconstitutional acts of its employees just because of their employment, under a *respondeat superior* theory."). Accordingly, the Court concludes that Plaintiff's *Monell* claim fails as a matter of law.

    **C.    Count III—Assault and Battery**

Plaintiff further claims that the alleged excessive force constitutes assault and battery under Pennsylvania law. (*See* Compl. ¶¶ 28-33.) In Pennsylvania, "an assault occurs when one

acts with the intent to place another in reasonable and immediate apprehension of harmful or offensive contact, and that act does cause such apprehension." *Zimmerman v. Schaeffer*, 654 F. Supp. 3d 226, 255 (M.D. Pa. 2009). "In addition, for an assault to occur, the actor must be in a position to inflict this contact and take some affirmative action to do so." *Tejada v. Correctional Officer Dale*, Civil No. 14-5604, 2015 WL 5729273, at *6 (E.D. Pa. Sept. 30, 2015). Battery, on the other hand, requires that the actor had the intent to cause harmful or offensive contact with the person of the plaintiff, and that such contact actually occurred. *See id*; *see also Benjamin v. Fassnacht*, 39 F. Supp. 3d 635, 648 (E.D. Pa. 2014). While corrections officers have the authority to use necessary force under appropriate circumstances, the reasonableness of this force in relation to their employment duties determines whether particular conduct is considered an assault and battery. *See Tejada*, at *6; *see also Picariello v. Fenton*, 491 F. Supp. 1026, 1037 (M.D. Pa. 1980) (determining that "necessary touchings by correctional officers of inmates in the performance of their duties are not batteries, but privileged contacts").

The Court finds that Plaintiff's assault and battery claims fail because it is clear that Defendant McLeod's actions served a legitimate purpose, to gain Plaintiff's compliance and maintain order in the cell block, and stemmed from a need to exert control over Plaintiff during an active "code yellow" situation. In other words, Defendant McLeod's actions were reasonable in relation to his employment duties as a correctional officer. *See Tejada*, at *6. Accordingly, the Court concludes that Plaintiff's assault and battery claims fail as a matter of law.

### D. Count IV—Intentional Infliction of Emotional Distress

Plaintiff asserts that Defendants intentionally caused him to suffer severe emotional distress. (*See* Compl. ¶¶ 34-39.) "An action for intentional infliction of emotional distress ("IIED") requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is

10

intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018) (citing *Arnold v. City of Phila.*, 151 F. Supp. 3d 568, 579 (E.D. Pa. 2015)).  Furthermore, to state a claim for IIED in Pennsylvania, a plaintiff must demonstrate that the defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005); *see Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 n.5 (Pa. Super. 2004);  *see also Smith v. Sch. Dist. Phila.*, 112 F. Supp. 2d 417, 428 (E.D. Pa. 2000) (noting that outrageousness occurs as a matter of law where a recitation of facts to an average member of the community would "arouse resentment against the actor," and lead him to exclaim "outrageousness").

The Court finds that Plaintiff's IIED claim fails as nothing about Defendant McLeod's actions—pushing a non-compliant inmate toward his cell during an active "code yellow" situation in the cell block—is "extreme" or "outrageous." *See Reeves*, 866 A.2d at 1122 n.5. Moreover, the Court notes that under Pennsylvania law "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *See Swisher v. Pitz*, 868 A.2d 1228, 2005 (Pa. Super. 2005).  Here, Plaintiff has failed to introduce any evidence by way of medical records or lay or witness testimony which supports his contention of suffering from physical injury or emotional distress.  In summary, the Court finds that Plaintiff has failed to submit any facts demonstrating that he has suffered any emotional distress as a result of Defendant McLeod's actions—as such, Plaintiff's IIED claim fails.

## V. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion for Summary Judgment. An appropriate Order will follow.

**IT IS SO ORDERED.**

                                              **BY THE COURT:**

                                              */s/ John Milton Younge*
                                              **Judge John Milton Younge**